1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5

6

BARBARA ANN SALDINGER,                          Case No:  C 10-3147 SBA (PR)

7
                Petitioner,                      **ORDER DENYING PETITIONER'S**
8                                                **MOTION FOR EMERGENCY STAY OF**
        vs.                                      **PETITIONER'S JAIL SENTENCE**
9
SANTA CRUZ COUNTY SUPERIOR
10 COURT,

11              Respondent.
                                             /
12

13          In March 2007, Petitioner, Dr. Barbara Ann Saldinger ("Petitioner"), suffered a

14 misdemeanor conviction following a jury trial in Santa Cruz County Superior Court for

15 brandishing an imitation firearm in violation of California Penal Code section 417.4.  On July

16 19, 2010, Petitioner filed a petition for a writ of habeas corpus in this Court, pursuant to 28

17 U.S.C. § 2254, to challenge her conviction and sentence.  Petitioner's Motion for Emergency

18 Stay of Petitioner's 60-Day Jail Sentence Pending Decision of Her Petition for a Writ of

19 Habeas Corpus is currently before the court.  (Docket 2.)  Having carefully read the parties'

20 papers and carefully considered their arguments and the relevant legal authority, the court

21 DENIES the motion.

22                                    **BACKGROUND**

23          The state court criminal proceedings arise out of a property line dispute between

24 Petitioner and her neighbor, Janette Magoc ("Magoc").  (Pet. for Writ of Habeas Corpus

25 ("Pet.") Ex. E at 2, Docket 1.)  In or about 2004, Petitioner and her husband, Dr. Todd

26 Saldinger, began excavating an area located near a line of cedar trees that separates their

27 respective properties, for the purpose of installing a water tank.  (*Id.* at 11.)  The Saldingers

28 claimed that the land was theirs.  (Resp't Opp'n to Mot. for Emergency Stay of Jail Sentence

("Opp'n") at 3, Docket 3.) Magoc, however, believed her grandmother had purchased the disputed parcel to expand the backyard. (*Id.*) The parties nevertheless had agreed that the line of cedar trees separating their properties was the temporary boundary line pending resolution of the dispute. (*Id.*)

In January 2006, Magoc showed her friend Linda Nikiforak ("Nikiforak") the excavated portion of the land. (*Id.*) Magoc and Nikiforak never crossed the temporary boundary established by the line on cedar trees. (*Id.*) Petitioner, who at that time was in the paddock with her horses, observed Magoc and Nikiforak standing in the excavated area, and yelled at them to get off her property. (Pet. Ex. E at 12-13.) Petitioner's husband also was present, holding a BB gun, and yelled, "You're trespassing, get off our property." (Opp'n at 5.) He then handed the BB gun to Petitioner as they walked toward the women. (*Id.* at 3-5.) Fearing for their safety, Magoc and Nikiforak retreated. (*Id.* at 3.)

As Magoc and Nikiforak were returning to Magoc's home, they encountered Barney Wagner ("Wagner"), a tree-cutter hired by Magoc to work on her property. (Id. at 13.) As Magoc was informing Wagner about their encounter with Petitioner, she heard a "crashing" noise through the trees and then saw Petitioner marching towards them with a firearm (i.e., the BB gun) in hand. (*Id.*) While standing *on Magoc's property*, Petitioner yelled: "Stay off my property. If you come on my property again, I'm going to shoot you." (*Id.*) Wagner corroborated Magoc's testimony. (*Id.* at 17.) Nikiforak likewise heard Petitioner state: "Stay off my property. If you come on my property again, you're trespassing and I have the right to shoot you." (*Id.* at 15.) Petitioner and her husband separately admitted that Petitioner yelled at Magoc and Nikiforak, but claimed they could not recall what Petitioner actually said. (*Id.* at 23.) All witnesses agreed that she did not point the BB gun at Magoc or Nikiforak. (*Id.* at 9.) Magoc called the police. (Opp'n at 4.)

Petitioner was charged with one count of brandishing an imitation firearm in violation of California Penal Code section 417.4,[1] of exhibiting a firearm in violation of Penal Code section 417(a)(2), and resisting, obstructing or delaying a peace officer or EMT in violation of Penal Code section 148(a)(1). (Pet. at 2.) The case was tried to a jury, which on March 6, 2007, convicted Petitioner of brandishing an imitation firearm, but acquitted her on the two remaining charges. (*Id.*) On April 25, 2007, the trial court sentenced Petitioner to thirty-six months probation, which included a condition requiring a sixty-day jail sentence. (Pet. E at 1.)

Petitioner appealed her conviction and sentence to the appellate division of the superior court. (Pet. at 2.) The sentence was stayed pending appeal. (*Id.* Ex. E at 1.) On May 13, 2010, the appellate division affirmed her conviction and sentence. (Pet. at 2.) Petitioner's request for rehearing or certification to the state court of appeal was subsequently denied. (*Id.*) Petitioner then petitioned the California Court of Appeal, Sixth Appellate District, to transfer the matter. (*Id.* at 3.) On June 23, 2010, the Sixth Appellate District denied Petitioner's request. (*Id.*) On July 1, 2010, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, including a request to stay her jail sentence. (*Id.*) The petition and stay request were both denied. (*Id.*) Following the conclusion of appellate proceedings, Petitioner appeared in state court for a status conference on July 28, 2010, where she was ordered to report to the Sheriff's Department. (Mot. at 2.)[2]

On July 19, 2010, Petitioner filed a Petition for Writ of Habeas Corpus in which she alleges three claims: (1) violation of due process resulting from the trial court's failure to provide an instruction on defense of habitation; (2) violation of the Second Amendment; and

---

[1] California Penal Code section 417.4 states: "Every person who, except in self-defense, draws or exhibits an imitation firearm, as defined in Section 12550, in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a misdemeanor punishable by imprisonment in a county jail for a term of not less than 30 days."

[2] In her Reply, filed July 29, 2010, Petitioner states that at the status conference, the trial court ordered her to report to the Santa Cruz County Sheriff's Department to arrange to serve her sentence. (Reply at 1.) The Sheriff's Department directed Petitioner to return on August 23, 2010, to begin serving her sentence. (*Id.*) It is not clear from the record whether the sentence, in fact, requires jail time. Petitioner acknowledges, however, that she in any event would not serve more than thirty days.

3

1  (3) violation of due process based on the subject statute's failure to provide fair notice of the

2  allegedly illegal conduct.  Because of the short duration of her imprisonment, Petitioner filed

3  the instant motion for an emergency stay of her sentence and to be released on bail.  (Pet. at

4  1).  Petitioner contends that if a stay is not imposed, her Petition will be rendered moot, as she

5  would be released from prison prior to its resolution.[3]

6  **DISCUSSION**

7  **A.     Legal Standard**

8         There are no federal statutes or rules that address whether a district court may grant

9  release to a petitioner pending its decision on the merits of a habeas petition.  *Hall v. San*

10  *Francisco Superior Court*, No. C 09-5299 PJH, 2010 WL 890044 at *2 (N.D. Cal. March 8,

11  2010) (Hamilton, J.).  Additionally, the Ninth Circuit has not yet decided "whether a district

12  court has the authority to grant bail pending a decision on a … habeas corpus petition." *In re*

13  *Roe*, 257 F.3d 1077, 1079-80 (9th Cir. 2001) ("We need not, and specifically do not, resolve

14  this issue today.").  Nevertheless, every circuit that has actually decided this issue has held

15  that district courts do, in fact, possess such discretionary authority.  *Hall*, 2010 WL 890044 at

16  *2 (citing cases from the First, Second, Third, Fifth, Sixth, Seventh, Tenth and District of

17  Columbia Circuit Court of Appeal).  However, such discretion is to be "exercised very

18  sparingly." *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985).  To obtain such relief,

19  the petitioner must demonstrate: (1) that the claim raises a substantial question and there is a

20  high probability of success on the merits; and (2) the case is extraordinary involving special

21  circumstances. *In re Roe*, 257 F.3d at 1080.

22

23

24  ───────────────

25         [3] In its opposition, Respondent characterizes Petitioners' request as one for a preliminary injunction.  (Opp'n at 6-7.)  However, Petitioner's motion is more appropriately characterized as a motion to be released on bail pending the outcome on the merits of her
26  habeas petition. *See Turner v. Yates*, Case No. CIV S-03-2248 DFL PAN P, 2006 WL 1097319, at *1 n.2 (E.D. Cal. April 26, 2006) ("[P]etitioner filed a motion for a temporary
27  restraining order and a preliminary injunction.  Since he seeks an order declaring his sentence illegal and directing his immediate release from custody, the court construes it as a request for
28  enlargement on bail pending resolution of the petition").

**B.      Analysis**

      **1.      Substantial Question/High Probability of Success on the Merits**

            **a)      Jury Instruction**

Petitioner alleges that her due process rights were violated as a result of the trial court's failure to instruct the jury of the defense of habitation; i.e., the "right to use reasonable force to defend her property against a future trespass." (Mot. at 5.)  The appellate division affirmed the trial court's ruling on this point on two grounds:  (1) there is no right to prevent a *future* trespass and (2) that the right to use force in defense of property is limited to situations where the wholesale destruction of that property is threatened.  (Pet. E at 28.)  Additionally, the panel held that the requested instruction, California Council of California Jury Instruction 3475 ("CALCRIM 3475"), only addresses a property owner's right to eject trespassers—not the ability to prevent them from trespassing in the future. (*Id.* at 29.)  Petitioner nonetheless contends that the appellate panel's decision is incorrect, as a matter of law, ostensibly because the "right to use reasonable force to terminate a criminal trespass encompasses the right to prevent a trespass from occurring in the first place." (*Id.* at 29-30.)

As a threshold matter, a state court's refusal to give a jury instruction does not, standing alone, raise a ground cognizable in a federal habeas corpus proceeding.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  Rather, an erroneous failure to give an instruction must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.*  Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  A defendant is entitled to an instruction on his defense theory only "if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." *United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotations omitted).

Petitioner argues that she believed Magoc and Nikiforak had trespassed onto her property, and thus, the jury should have been given an instruction on defense of habitation.

1  (Reply at 5.) "[D]efense of habitation applies only if the defendant's belief that a trespass is

2  occurring or about to occur is reasonable." *People v. Curtis*, 30 Cal.App.4th 1337, 1360

3  (1994). In this case, there is no basis to support Petitioner's assertion that she reasonably

4  believed that a trespass had occurred. The undisputed evidence at trial showed that Magoc

5  and her friend were standing in the excavated area when Petitioner began yelling at them to

6  leave her property. (Opp'n at 8.) At that time, ownership of the excavated pad was

7  disputed—and Petitioner was well aware of this dispute. She knew that the cedar trees

8  provided the temporary boundary line, and could discern that Magoc and Nikiforak were

9  standing on Magoc's side of the tree line. Thus, Petitioner could not have reasonably believed

10 that Magoc and Nikiforak trespassed.

11        Nor could Petitioner have had a reasonable belief that a trespass was about to occur.

12 When Petitioner first demanded that Magoc and Nikiforak leave the disputed area, they did so

13 quickly, without objection. There is no evidence that Magoc and Nikiforak were planning on

14 trespassing onto Petitioner's property or otherwise posed a threat to Petitioner or her property.

15 Indeed, Petitioner's husband conceded that he did not feel threatened by Magoc and

16 Nikiforak. (Opp'n at 9.) Thus, the threat of using a firearm simply was not reasonable to

17 prevent Magoc and Nikiforak from entering Petitioner's property. *See Curtis*, 30 Cal.App.4th

18 at 1360 ("[T]he intentional use of deadly force merely to protect property is never

19 reasonable."). Moreover, the fact that the threat and brandishing of the weapon occurred *on*

20 *Magoc's property* further demonstrates that no reasonable jury could have found for Petitioner

21 on the basis of a defense of habitation argument.[4]

22        Finally, Petitioner argues that "even if Magoc and Nikiforak left within a reasonable

23 time, [she] was not precluded from warning them not to return." (Reply at 5.) She cites no

24 authority for this proposition. In fact, this argument contradicts the explicit language of

25

26        [4] In her Reply, Petitioner argues that there is no authority requiring a landowner to be
   on *her own property* when warning a third party to avoid trespassing. (Reply at 5.) This
   argument misses the mark. Magoc and Nikiforak retreated from the temporary boundary after
27 Petitioner and her husband's ostensibly histrionic warnings. Since Magoc had already left the
   disputed area, Petitioner had no legitimate reason to trespass onto *Magoc's* property and
28 threaten to shoot them.

1  CALCRIM 3475, which clearly conditions the use of reasonable force on the trespasser's

2  failure to leave within a reasonable time.   *See* Cal. Crim. 3475 ("*If the trespasser does not*

3  *leave within a reasonable time* and it would appear to a reasonable person that the trespasser

4  poses a threat to (the (home/property)/ [or] the (owner/ [or] occupants), the (owner/lawful

5  occupant) may use reasonable force to make the trespasser leave.") (emphasis added).  In

6  sum, the court finds that Petitioner has not shown a high probability of success on her due

7  process claim based the failure to give a defense of habitation instruction.

8                              **b)      Second Amendment**

9         In her second claim, Petitioner alleges that her acts of brandishing a BB gun and

10  threatening her neighbor is protected under the Second Amendment, as interpreted by the

11  Supreme Court in *District of Columbia v. Heller*, -- U.S. --, 128 S.Ct. 2783 (2008) and

12  *McDonald v. City of Chicago, Illinois*, -- U.S. -- , 130 S.Ct. 3020 (2010).  (Pet. at 9-10.)

13  Specifically, she alleges that in light of these decisions, "California law cannot ban the

14  reasonable use of firearms in defense of one's home, including displaying and pointing a

15  firearm at an intruder." (Mot. at 5.)  This contention is misplaced.

16         In *Heller*, the Supreme Court struck down various District of Columbia statutes

17  prohibiting the possession of handguns and requiring lawfully-owned firearms to be kept

18  inoperable.  128 S.Ct. at 2817-18; *see also McDonald*, 130 S.Ct. at 3036 (extending *Heller* to

19  the States as a matter of due process under the Fourteenth Amendment).  However, the

20  Supreme Court cautioned that: "Like most rights, the Second Amendment right is not

21  unlimited.  It is not a right to keep and carry any weapon whatsoever in any manner

22  whatsoever and for whatever purpose." *Heller*, 128 S.Ct. at 2786.  Notably, neither *Heller* nor

23  *McDonald* forbids any State from imposing reasonable restrictions on the use of weapons to

24  eject or prevent trespassers.  Thus, despite Petitioner's intimations to the contrary, there is no

25  constitutional right to unreasonably brandish a firearm to prevent a future trespass.

26         The above notwithstanding, the court is unpersuaded by Petitioner's claim that

27  displaying and threatening use of a firearm to defend her property necessarily is

28  constitutionally protected conduct.  After Petitioner yelled at Magoc and Nikiforak to leave,

                                              7

1    they complied immediately.  Since the initial request for the alleged trespassers to leave the

2    disputed area was honored, no further show of force was appropriate for Petitioner to defend

3    what she claimed of her property.   *See People v. Straiten*, 71 Cal.App.3d 526, 534 n.7 (1977)

4    ("The lawful occupant of real property has the right to request a trespasser to leave the

5    premises.  If the trespasser does not do so within a reasonable time, such occupant may use

6    [reasonable] force to eject the trespasser.").  Petitioner also argues that "*Heller* makes clear

7    that a state cannot criminalize a homeowner's act of pointing a firearm at an intruder."  (Reply

8    at 6.)  Again, Petitioner misstates the record.  Petitioner provides no evidence that Magoc and

9    Nikiforak trespassed on her property, and hence, were not "intruders."  In sum, the court

10   concludes that Petitioner has failed to show a high probability of success on her second claim

11   under the Second Amendment.

12                              **c)      Fair Notice**

13          Finally, Petitioner avers that she did not receive a "fair warning as to the criminality of

14   her conduct."  (Mot. at 6.)  She claims that "[g]iven the clearly established principle that

15   reasonable force may be used to protect one's property from trespass, it is simply impossible

16   to maintain that Dr. Saldinger was on notice in 2006 that announcing a right to shoot

17   trespassers while holding a BB gun pointed at no one would subject the declarant to a

18   criminal conviction and a substantial jail term."  (Pet. at 11.)  Neither party addresses this

19   claim in any meaningful manner in their respective briefs.  In any event, it is unlikely that

20   Petitioner will succeed on this claim.  Despite Petitioner's suggestions to the contrary, she did

21   not merely hold her BB gun and announce that she would shoot her neighbor if she

22   trespassed.  Rather, the evidence at trial showed that Petitioner abruptly trespassed onto

23   Magoc's property while yelling and threatening to shoot them with the BB gun (which she was

24   then holding).  Such conduct falls squarely within Penal Code section 417.4, which prohibits a

25   person from drawing or exhibiting an imitation firearm "in a threatening manner against

26   another in such a way as to cause a reasonable person apprehension or fear of bodily

27   harm . . . ."  Petitioner's suggestion that she was unaware that such conduct could constitute a

28   criminal act is unpersuasive.

### 2.    Special Circumstances

Release on bail from a state conviction pending adjudication of a habeas petition is limited to extraordinary cases.  *See Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993) ("[s]ince a habeas petitioner is appealing a presumptively valid state conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case").  Here, Petitioner argues that absent a stay, she will have completed her sentence before the court has had an opportunity to resolve her petition on the merits.  (Mot. at 6-7.)  There is authority to support Petitioner's contention.  *See Hall*, 2010 WL 890044 at *13 (citing *Calley v. Callaway*, 496 F.2d 701, 702 n.1 (5th Cir. 1974)).   Nonetheless, assuming without deciding that the brevity Petitioner's sentence constitutes an exceptional circumstance, the fact that Petitioner is unlikely to succeed on her habeas claims is sufficient, standing alone, to reject her motion.  *See Hall*, 2010 WL 890044 at *13 (finding that a short sentence may constitute exceptional circumstances, but denying motion for release pending review where petitioner failed to establish a high probability of success on his habeas claims).

### CONCLUSION

For the reasons set forth above, Petitioner's motion for emergency stay of jail sentence is DENIED.

**IT IS SO ORDERED.**

Dated: August 24, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge
General Duty

9