UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BARBARA ANN SALDINGER,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>SANTA CRUZ COUNTY SUPERIOR COURT,<br><br>　　　　Respondent. | Case No: C 10-3147 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

This matter is now before the Court for consideration of Petitioner Barbara Ann Saldinger's Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. Through counsel, Petitioner seeks to challenge her 2007 state court misdemeanor conviction and sentence for exhibiting an imitation firearm in violation of California Penal Code section 417.4. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the Petition.

I.    **BACKGROUND**

Janette Magoc and her brother own real property located at 24550 Old Santa Cruz Highway, Los Gatos, California, which they inherited from their grandparents and mother. Respn't Ex. B, Reporters Transcript ("RT") 160-62. Petitioner and her husband, Dr. Todd Saldinger (collectively "the Saldingers"), owned the neighboring property at 17123 Laurel Road. RT 862. The Saldingers, both of whom are physicians, did not reside at the property, but used it instead for their five horses. Id.

In or about 2004, the Saldingers began excavating an area located near a line of cedar trees that separates their property from Magoc's for the purpose of installing a water tank. RT 877-78, 883. The Saldingers claimed that the land was theirs, though Magoc believed that her grandmother had previously purchased the disputed area of land. RT 952-

53, 883-84.  The Saldingers ceased the excavation pending the completion of a land survey to determine ownership of the disputed area.[1]  RT 884.

On January 17, 2006, Barney Wagner ("Wagner") of Summit Tree Service was working on Magoc's property, using a chainsaw to remove and trim various trees.  RT 172.  While Wagner was working, Magoc and her friend Linda Nikiforak ("Nikiforak"), who was visiting from Chicago, walked over to the excavation area.  RT 163-64, 172, 175.  Petitioner spotted the women and walked aggressively towards them screaming, "Stop those fucking saws.  They're, they're, they're bothering my horses."  RT 185, 368.  She also yelled at them to get her off "fucking" of her property—or words to that effect.  RT 186.  Stunned and frightened, the women retreated to Magoc's home without responding or reacting to Petitioner.  RT 186-87, 371.

At Magoc's house, she and Nikiforak encountered Wagner and told him what had transpired.  RT 187-188.  At that point, Petitioner approached Magoc and Nikiforak while holding a rifle, with hand on the rifle butt, across her upper body.  RT 192, 321-22.  The firearm was a BB gun owned by Mr. Saldinger which he handed to his wife at some point during the encounter.  RT 909.   Visibly enraged, Petitioner yelled:  "Stay off my property.  If you come on my property again, I'm going to shoot you."  RT 194.  Petitioner's threat was heard by Magoc, Nikiforak and Wagner.  RT 328, 372, 421.  Fearing for their lives, the women went inside Magoc's home and called 9-1-1.  RT 377-78.  Santa Cruz Sheriff's deputies were dispatched to the scene.  RT 485.

Petitioner was charged with one count of exhibiting an imitation firearm in a threatening manner in violation of California Penal Code section 417.4,[2] of exhibiting a

---

[1] On February 10, 2010, Magoc and her brother obtained a civil judgment resolving the property dispute against the Saldingers.  Answer Ex. D.

[2] The version of California Penal Code section 417.4 in effect in 2006 stated: "Every person who, except in self-defense, draws or *exhibits an imitation firearm*, as defined in Section 12550, in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a misdemeanor punishable by imprisonment in a county jail for a term of not less than 30 days." (Emphasis added).

firearm in violation of Penal Code section 417(a)(2), and resisting, obstructing or delaying a peace officer or EMT in violation of Penal Code section 148(a)(1). Answer Ex. A at 4. The case was tried to a jury, which on March 6, 2007, convicted Petitioner of exhibiting an imitation firearm in a threatening manner, but acquitted her on the two remaining charges. Id. at 316-18.

On April 25, 2007, the trial court sentenced Petitioner to thirty-six months of probation, which included a condition requiring a sixty-day jail sentence. Id. at 361. The court recommended Petitioner for work release. Id. at 363. Petitioner appealed her conviction and sentence to the Appellate Division of the Santa Cruz County Superior Court, which affirmed the conviction on May 13, 2010. Id. at 387. On June 23, 2010, the California Court of Appeal denied Petitioner's request to transfer her case to the court of appeal from the appellate division of the superior court. Pet. Ex. D. Petitioner then filed a petition for writ of habeas corpus and request for stay with the California Supreme Court, which summarily denied the petition and stay request on July 14, 2010. Id. Ex. F.

On July 19, 2010, Petitioner filed a Petition for a Writ of Habeas Corpus ("Petition") in this Court, pursuant to 28 U.S.C. § 2254. Dkt. 1. The Petition alleges three claims: (1) violation of due process resulting from the trial court's failure to provide an instruction on ejecting trespassers; (2) violation of the Second Amendment; and (3) violation of due process on the ground that Penal Code section 417.4 fails to provide fair notice of the conduct proscribed.

On July 20, 2010, Petitioner filed a motion for emergency stay of Petitioner's 60-day jail sentence pending decision of her petition for a writ of habeas corpus. Dkt. 2. On August 24, 2010, the Court denied Petitioner's motion on the grounds that she had failed to show a high probability of success on her petition and the existence of special circumstances warranting an emergency stay. Dkt. 7.

Subsequently, the state trial court ordered Petitioner to complete twenty-nine days of work release in lieu of jail time. Answer Ex. F. Petitioner was assigned to work at the Saratoga Summit Fire Station site for the Santa Cruz County Work Release Program on

Mondays and Tuesdays from August 23, 2010 through November 29, 2010. Id.  While working at the station, Petitioner injured her hand and was reassigned to work at the Goodwill center.   On January 27, 2011, Petitioner filed another motion to stay, seeking to stay the remaining eleven days of her sentence.  Dkt. 29.  The Court denied the request on August 25, 2011.  Dkt. 19.

Respondent has filed an Answer to the Petition and submitted copies of the relevant state court record for the Court's review and Petitioner has filed her Traverse.  Dkt. 8, 9, 14.  The matter is fully briefed and is ripe for adjudication.

## II.   LEGAL STANDARD

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, as is the case here, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  Harrington v. Richter, 131 S.Ct. 770, 784 (2011).

### III. DISCUSSION

#### A. JURY INSTRUCTION

Petitioner alleges that her due process rights were violated as a result of the trial court's rejection of her request to use a modified version of CALCRIM No. 3475, "Right to Eject Trespasser From Real Property."  RT 1459.[3]  The trial court reasoned that the instruction was "not relevant" to the charges, particularly given testimony presented.  RT 1459-60.

---

[3] The nature of the alleged modifications is not disclosed in the record or by the parties.

Ordinarily, issues regarding jury instructions present questions of state law only, and therefore, are not susceptible to federal habeas corpus review. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Rather, an erroneous failure to give an instruction must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). A defendant is entitled to an instruction on his defense theory only "if the theory is legally cognizable *and* there is evidence upon which the jury could rationally find for the defendant." United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotations omitted, emphasis added).

Petitioner claims that she was deprived a meaningful opportunity to present a defense as a result of the trial court's failure to instruct the jury on her right to use reasonable force to defend her property against a future trespass. See Pet. at 6-7; see also Pet'r Mot. for Stay at 5, Dkt. 2. Petitioner relies on California Civil Code section 50, which provides that "[a]ny necessary force may be used to protect from wrongful injury the person or property of oneself …." However, neither Civil Code section 50 nor any other legal authority cited by Petitioner supports the conclusion that a private citizen has a right to use force to prevent a *future* trespass. Indeed, Petitioner's position is antithetical to the basic precepts of self-defense, which rejects the notion that the threat of *future* harm is sufficient invoke such a defense. See People v. Stitely, 35 Cal.4th 514, 551 (2005) (holding that for purposes of self-defense, "the fear must be of imminent harm. Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice.") (internal quotations omitted); People v. Saavedra, 156 Cal.App.4th 561, 568 (2007) ("fear of harm even in the near future is insufficient").

But even if the right to use force to prevent a future trespass existed—which Petitioner has failed to show—there was no evidentiary basis for her proposed jury instruction. See Boulware, 558 F.3d at 974. At the time Petitioner first encountered Magoc

and Nikiforak, they were on Magoc's property.  Even so, Magoc and Nikiforak immediately retreated from the disputed area, without resistance or objection, after Petitioner yelled at them to get off her "fucking" property.  To the extent that Petitioner believed that Magoc and Nikiforak were trespassing at that point, there is no evidence to support the conclusion that they would return to the disputed area in question.  Petitioner thus could not have had any legitimate, legal reason to trespass onto *Magoc's* property, provocatively baring a firearm across her chest, and threaten to shoot Magoc and her friend if they returned to what Petitioner believed (erroneously) was her property.

The Court has independently reviewed the record and concludes that the trial court's decision not to provide the requested instruction was objectively reasonable.  Therefore, habeas relief on Petitioner's first claim is DENIED.

### B. SECOND AMENDMENT

In her second claim, Petitioner alleges that her acts of exhibiting a BB gun and threatening her neighbor are protected under the Second Amendment, as interpreted by the Supreme Court in District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago, Illinois, -- U.S. -- , 130 S.Ct. 3020 (2010).  See Pet. at 9-10.  In Heller, the Supreme Court struck down various District of Columbia statutes prohibiting the possession of handguns in the home and requiring lawfully-owned firearms to be kept inoperable.  554 U.S. at 635.  McDonald extended Heller to the States as a matter of due process under the Fourteenth Amendment.  McDonald, 130 S.Ct. at 3036.  However, the Supreme Court cautioned that:  "Like most rights, the Second Amendment right is not unlimited.  It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  Heller, 128 S.Ct. at 2786.

Petitioner has failed to demonstrate that the state court unreasonably applied clearly established federal law.  Unlike Heller and McDonald, Petitioner was convicted of exhibiting a firearm in a threatening manner, not of possession.  Nor does she challenge the constitutionality of California Penal Code § 417.4.  Moreover, while the Supreme Court has established that the Second Amendment applies to state gun laws, it has not clearly

1 established what those parameters are.  Fuentes v. McDonald, No. CV 11-1912 PA
2 (MRW), 2012 WL 315565, *10 (C.D. Cal. May 7, 2012) (rejecting habeas claim that
3 California's gun possession statute violates the Second Amendment).  Perhaps more
4 fundamentally, nothing in Heller or McDonald can be reasonably construed as a clearly
5 established federal right to exhibit a firearm in such a way as to cause a reasonable person
6 apprehension or fear of bodily harm ostensibly in order to prevent a possible, future
7 trespass.  Habeas relief on Petitioner's second claim is therefore DENIED.

### C. FAIR NOTICE

"Due process requires that a criminal statute 'give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.'"  Mendez v. Small, 298 F.3d 1154, 1158 (9th Cir. 2002) (citations omitted).  "A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question."  United States v. Weitzenhoff, 35 F.3d 1275, 1289 (9th Cir. 1994) (internal quotation marks omitted).  Under the rule of lenity, ambiguous criminal statutes are construed in favor of defendants.  United States v. Gonzalez-Mendez, 150 F.3d 1058, 1061 (9th Cir. 1998).  "[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.'"  Barber v. Thomas, 560 U.S. 474, 130 S.Ct. 2499, 2508 (2010).

Here, Petitioner fails to identify *any* grievous ambiguity or uncertainty in the language of Penal Code section 417.4—nor is any readily apparent from the face of the statute.  The version of section 417.4 in effect in 2006 provided that: "Every person who, except in self-defense, draws or exhibits an imitation firearm, as defined in subdivision (a) of Section 12550 [now Section 16700], in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a misdemeanor punishable by imprisonment in a county jail for a term of not less than 30 days." Cal. Penal Code § 417.4 (2004).  A reasonable person would know that confronting another individual while holding a rifle across her chest while exhibiting highly agitated

behavior and threatening to shoot the other person (or claiming to have the right to do so) would cause a reasonable person to fear for his safety—and that such conduct would violate the plain terms of the statute. As such, Petitioner's claim that section 417.4 did not afford her fair notice that her conduct was illegal is simply specious. Habeas relief on Petitioner's third claim is therefore DENIED.

### D. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). The Court declines to issue a COA in this case, as Petitioner has not demonstrated that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus is DENIED.

2. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: September 26, 2013

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge